Jiles DANIELS, Appellant,

v.

EMPTY EYE, INC., Empty Eye &
Associates, L.P., and Judith
Daniels, Appellees.

No. 14–10–00115–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 8, 2012.

Rehearing Overruled June 6, 2012.

744

Charles Marcellus Vethan, Houston, for Appellant.

Mark Wham, Gregory Jay Finney, Krista Renee Fuller, Houston, for Appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

Jiles Daniels was sued by his former wife Judith Daniels and two of the former couple's businesses for breach of fiduciary duty and breach of contract. A jury found that Jiles owed a fiduciary duty to the company in which he previously had been a limited partner and that he breached his fiduciary duty both to the limited partnership and to the corporation that served as the general partner. The jury also found that Jiles breached the limited partnership agreement, causing damages to Judith and both companies. The trial court rendered judgment in favor of the limited partnership on the breach-of-fiduciary-duty claim and in favor of Judith and the corporation on the breach-of-contract claim. We affirm the portion of the judgment awarding damages to the limited partnership for

breach of fiduciary duty, and reverse the judgment as to the contract claims.

## I. FACTUAL AND PROCEDURAL HISTORY

Jiles Daniels married Judith Daniels in 1997, and in 2000, they formed Empty Eye, Inc. ("the Corporation"). Jiles and Judith each owned half of the shares in the Corporation, and each was a corporate officer. That same year, the Corporation, Jiles, and Judith signed a Limited Partnership Agreement ("the Partnership Agreement") regarding the formation and operation of Empty Eye & Associates, L.P. ("the Limited Partnership"). The Corporation owned one percent of the Limited Partnership and served as the general partner, and Jiles and Judith were the limited partners.

The companies were involved in the construction and management of apartment complexes near Prairie View A & M University. After building two apartment complexes, they planned to build another, which the parties call "the Cochran Project." The Limited Partnership bought land for the Cochran Project in 2005, obtained construction financing from Independence Bank, N.A. (the "Bank"), and in September 2006, the Limited Partnership entered into a construction loan agreement with the Bank. Pursuant to that agreement and as part of the financing for the Cochran Project, Jiles and Judith each executed a personal guaranty of the Limited Partnership's indebtedness to the Bank. By its terms, each guaranty could be rescinded if no funds had been advanced. By the fall of 2006, the Limited Partnership had entered into contracts with contractors for work on the Cochran Project.

During this time, Jiles and Judith began to have marital difficulties. Jiles testified that in the fall of 2006, he became concerned when he learned that Judith had made payments on the Limited Partnership's debt to a different bank using credit cards with a thirty-percent interest rate. In December 2006, Jiles filed a divorce petition in Montgomery County, Texas. The Bank had not yet advanced any funds for the Cochran Project, and in January 2007, Jiles notified Judith that he did not want to proceed with construction. On February 22, 2007, Jiles rescinded his personal guaranty on the construction loan and asked the Bank not to advance any funds for the Cochran Project. A few days after Jiles rescinded his personal guaranty, the Bank rescinded the construction loan and invited Jiles and Judith to reapply for a loan jointly or individually,

Jiles also contacted concrete contractors on the Cochran Project and informed them that he did not authorize their work. He advised them that before performing any work on the Cochran Project, they should ensure that they would be paid. In addition, he notified at least one concrete contractor that the construction loan had been rescinded. Jiles later testified that he contacted the contractors because he did not want to be personally responsible for any liabilities arising from the Cochran Project.

In January 2008, Judith, the Limited Partnership, and the Corporation sued Jiles in Harris County for breach of fiduciary duty and breach of contract. As relevant to this appeal, the jury found that Jiles had a relationship of trust and confidence with the Limited Partnership, and that he breached his fiduciary duty to the Limited Partnership, causing damages of $171,601.21. The jury also found that Jiles breached his fiduciary duty to the Corporation, causing the Corporation damages of $1,733.35. Finally, the jury found that Jiles breached the Limited Partnership Agreement, causing the plaintiffs damages of $173,334.56. The trial court rendered judgment that (1) the Limited Partnership

recover $171,601.21 for breach of fiduciary duty; (2) Judith and the Corporation recover $173,334.56 for Jiles's breach of the Partnership Agreement; and (3) Judith, the Limited Partnership, and the Corporation recover $160,837.14 for attorneys' fees through the date of judgment. The trial court also awarded Judith, the Limited Partnership, and the Corporation pre- and post-judgment interest, taxed costs against Jiles, and conditionally awarded the plaintiffs additional attorneys' fees in the event that Jiles brought unsuccessful appeals.

## II. ISSUES PRESENTED

Jiles presents five issues for our review. In his first issue, he contends that the evidence is legally and factually insufficient to support the finding that he owed a fiduciary duty to the Limited Partnership. In his second issue, he challenges the legal and factual sufficiency of the evidence that he breached the Limited Partnership Agreement or that Judith or the Corporation sustained any damages. He argues in his third issue that the trial court erred in awarding damages for both breach of fiduciary duty and breach of contract. In his fourth issue, he contends that the trial court erred in awarding damages "based on conduct [which] was agreed to by the parties and commemorated in multiple court orders" by the divorce court. Finally, he asserts in his fifth issue that the trial court erred in denying his motion for new trial because res judicata bars the claims at issue in this case.

## III. STANDARD OF REVIEW

■ When a party challenges the legal sufficiency of the evidence to support a finding, we review the record in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could

not. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id.* Evidence is legally insufficient only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

■ When a party challenges the factual sufficiency of a finding for which he did not have the burden of proof, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We bear in mind that we may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence clearly would support a different result. *Id.* at 407.

## IV. ANALYSIS

### A. Preservation of Error

■ Because Jiles argues on appeal that the evidence is legally and factually insufficient to support various jury findings on which the judgment is based, we begin our analysis by clarifying the extent to which these challenges have been preserved.

■ In a case tried to a jury, an argument that the evidence is legally insufficient to support a finding can be preserved for appeal in one of five ways: (1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict,

(3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *See Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex.1988) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985)); *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In contrast, a party challenging the factual sufficiency of the evidence to support a jury finding must raise this issue in a motion for new trial to preserve error. *See* Tex.R. Civ. P. 324(b)(2), (3); *Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.-Houston [14th Dist.] 2006, no pet.).

■ Of all of these recognized ways of preserving challenges to the sufficiency of the evidence, Jiles filed only a motion that he styled as a motion for new trial. But, to determine the nature of this document, we do not look solely at its title, but consider also the substance of the pleas for relief. Tex.R. Civ. P. 71; *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex.2011) (per curiam). In *Ryland Enterprise*, the Texas Supreme Court addressed circumstances analogous to those presented here. In that case, the jury returned a verdict in the plaintiff's favor, and before the trial court rendered judgment, the defendant filed a motion styled as a motion for judgment notwithstanding the verdict. *Id.* at 665. In the motion, the defendant attacked the legal sufficiency of the evidence and asked the trial court to render a verdict favorable to the defense, or in the alternative, to order a new trial. *Id.* at 666. Given the nature of the relief requested, the court reasoned that the defendant's motion, although premature, was in effect a motion to modify the judgment because the defendant "assailed the judgment that was eventually signed." *Id.* And because the defendant alternatively

requested a new trial, the motion also served as a motion for a new trial. *See id.*

Here, Jiles asked the trial court to order a new trial, or alternatively, to render a take-nothing judgment on all of the plaintiffs' claims. We therefore construe the motion not only as a motion for new trial, but also as a motion for modification of the judgment or for judgment notwithstanding the verdict. Thus, we conclude that the legal-sufficiency arguments raised in the motion are preserved for our review. But, because Jiles did not include in the motion any challenges to the factual sufficiency of the evidence, those arguments were not preserved, and we do not consider them on appeal. *See* Tex.R.App. P. 33.1(a) (preservation of error in the trial court is a prerequisite to appellate review).

## B. Existence of a Fiduciary Relationship with the Limited Partnership

■ In his first appellate issue, Jiles argues that he had no fiduciary duty to the Limited Partnership, and thus, the evidence necessarily is legally insufficient to show that he breached such a duty.

■ A "fiduciary" is a "person who occupies a position of peculiar confidence towards another." *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 571, 160 S.W.2d 509, 512 (1942). Certain formal relationships, such as that between an attorney and a client or between a trustee and the trust's beneficiaries, give rise to a fiduciary relationship as a matter of law. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex.2002). An informal fiduciary relationship, also known as a "confidential relationship," may arise "'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one.'" *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992) (quoting *Fitz–Gerald v.*

*Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951)), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225–26 (Tex.2002). The existence of an informal relationship is "determined from the actualities of the relationship of the persons involved." *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). If a business transaction is involved, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 288 (Tex.1998).

Because Jiles did not object to the jury charge, it is the standard by which we measure the sufficiency of the evidence. *See Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 221 (Tex.2005). In the first question of the charge, the jury was asked, "Did a relationship of trust and confidence exist between Jiles Daniels and either [Judith or the Limited Partnership]?" As relevant to Jiles's first issue, this question was accompanied by the following instructions:

> A relationship of trust and confidence existed if Plaintiff justifiably placed trust and confidence in Jiles Daniels to act in its best interest. Plaintiff's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.
>
> . . .
>
> You are instructed that a limited partner does not owe a fiduciary duty to the limited partnership or another limited partner simply because of his status as a limited partner.[1]

Given the breadth of the instructions, the jury properly could find that a confidential relationship existed if there was more than a scintilla of evidence that the Limited Partnership justifiably trusted Jiles to act in its best interest, as long as that trust was not based solely on Jiles's status as a limited partner or solely on the Limited Partnership's "subjective trust and feelings." The record contains such evidence.

When the Cochran Project began, Jiles Daniels already had formal fiduciary relationships with every other member of the Limited Partnership. Aside from Jiles, the only other members of the Limited Partnership were Judith and the Corporation. Jiles owed the Corporation a fiduciary duty because he was its president. *See Hoggett v. Brown,* 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (corporate officers owe fiduciary duties to the corporation). He had a fiduciary relationship with Judith because he was married to her. *See Ditta v. Conte,* 298 S.W.3d 187, 191 (Tex.2009) ("[T]he marital relationship between spouses is a fiduciary relationship."). These relationships predated the transactions involved in the Cochran Project. *See CAT Contracting, Inc.,* 964 S.W.2d at 288. Although the facts were disputed, there was evidence that Jiles participated in developing the Limited Partnership's business plan, and Judith trusted him as a business partner. Jiles and Judith used the Limited Partnership not only in buying, developing, and managing real estate for rental purposes, but also in building and purchasing their own residence. Although Jiles and Judith were limited partners and were not otherwise obligated to do so, they personally

---

1. The jury also was instructed that "a limited partner does not participate in the control of the business" by performing certain actions. This instruction is not relevant to the issue presented because the jury was neither asked to determine whether Jiles participated in control of the limited partnership's business nor instructed that there was any relationship between control and the existence of a confidential relationship.

guaranteed payment of the Limited Partnership's debt to commercial lenders.

Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Jiles had a fiduciary relationship with the Limited Partnership. *Cf. Dunnagan v. Watson,* 204 S.W.3d 30, 46–47 (Tex.App.-Fort Worth 2006, pet. denied) (overruling legal-sufficiency challenge to the evidence supporting the jury's finding that a person who was both a limited partner and the president of the corporate general partner breached fiduciary duties to the limited partnership); *Grierson v. Parker Energy Partners 1984–I,* 737 S.W.2d 375, 377–78 (Tex.App.-Houston [14th Dist.] 1987, no writ) (stating that an officer of a corporate general partner who knowingly participates in the corporation's breach of its fiduciary duty to the limited partnership may be held personally liable). We therefore overrule Jiles's first appellate issue and affirm the portion of the judgment in which the trial court awarded damages to the Limited Partnership for Jiles's breach of fiduciary duty.

## C. Breach of the Partnership Agreement

■ In his second issue, Jiles argues, *inter alia,* that the evidence is legally insufficient to support a finding that he breached the Limited Partnership Agreement. We agree.

■ When determining the obligations of contracting parties, courts generally look only to the written agreement. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.,* 121 S.W.3d 742, 747 (Tex.2003). Nothing in the Limited Partnership Agreement required Jiles to act as the Limited Partnership's guarantor or restricted his right to rescind the guaranty. The Limited Partnership Agreement instead provided in pertinent part as follows:

[T]he Limited Partners shall, upon notice from the General Partner, make additional Capital Contributions as requested by the General Partner in proportion to their limited partnership interests. Each such additional contribution or financial inducement shall be made at the request, in such manner and in such amount as the General Partner shall specify, and shall be reflected as a credit in such Limited Partner's Capital Account.

. . .

Provided that the Limited Partners act in accordance with this Agreement and except as otherwise provided by an Assumption Agreement, no Limited Partner shall be liable for the debts, liabilities, contracts, or any other obligations of the Partnership. Except as otherwise provided by any other agreements among the Partners or mandatory provisions of applicable state law, a Limited Partner shall be liable only to make his Capital Contributions and shall not be required to lend any funds to the Partnership or, after his Capital Contributions have been made, to make any additional Capital Contributions to the Partnership.

. . .

No Partner shall be required to make any additional contributions to the Partnership except as expressly provided in this Agreement.

. . .

None of the Partners shall be obligated to make any loan or advance to the Partnership.

Under the terms of the Limited Partnership Agreement, no limited partner was expressly required to act as a guarantor of the Limited Partnership's debts. Judith nevertheless contends that because Jiles was the president of the general partner

and gave his personal guaranty to the Bank, it is logical to infer that the guaranty was requested by the general partner. But, under the terms of the Limited Partnership Agreement, any such request was required to be made or memorialized in writing. There is no evidence that any such request was made or communicated in any form. Moreover, such an inference would not be logical, but instead would be an example of the logical fallacy known as "affirming the consequent." *See Paulson v. State*, 28 S.W.3d 570, 572 (Tex.Crim. App.2000) ("That is like saying, 'Pneumonia makes you cough; therefore, if you cough, you have pneumonia. This is the logical fallacy called 'affirming the consequent.' "). *See also Cuomo v. Clearing House Ass'n, L.L.C.,* 557 U.S. 519, 129 S.Ct. 2710, 2720, 174 L.Ed.2d 464 (2009) (rejecting an argument in which "[i]ts fundamental contention ... rests upon a logical fallacy"); *Lyondell Petrochemical Co. v. Fluor Daniel, Inc.,* 888 S.W.2d 547, 554 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (op. on reh'g) (rejecting argument based on logical fallacy).[2]

Judith also asserts that "once [Jiles] agreed to be bound to that obligation [to personally guarantee the construction loan], he was required to honor *that* contractual promise." But, the terms of Jiles's agreement with the Bank expressly permitted Jiles to rescind his guaranty before any funds were advanced, and he did not breach the guaranty agreement by doing so.

Finally, Judith cites language from the Limited Partnership Agreement concerning the Corporation's obligation to take actions to further the Limited Partnership's purpose, and its obligation to refrain from "engaging in any activity that would make it impossible for the [Limited Partnership] to carry on its business." This language provides no basis on which to affirm the judgment in favor of Judith and the Corporation on their contract claims. Although Jiles was the Corporation's president at the time the contract claims accrued, he and the Corporation are distinct entities with different obligations. As the general partner, the Corporation was liable for the Limited Partnership's debts; as a limited partner, Jiles was not. Further, the Limited Partnership continued to own and lease other properties throughout the parties' disputes about the financing and development of the Cochran Project.

Because the evidence is legally insufficient to support the finding that he breached the Limited Partnership Agreement, we sustain the legal-sufficiency challenge presented in Jiles's second issue. We accordingly reverse the portion of the judgment awarding damages to Judith and the Corporation for breach of the Limited Partnership Agreement. Because this eliminates the only basis on which the trial court could have awarded attorney's fees, we reverse that award as well. In light of the disposition of this issue, we do not reach Jiles's third issue, in which he argued that the trial court's award of damages for both breach of fiduciary duty and breach of contract constituted a double recovery for a single injury.[3]

---

**2.** Even if the agreement Jiles signed could be considered evidence that the general partner asked him to sign the agreement, this evidence could show only that he was asked to sign a revocable guaranty; thus, rescinding his guaranty still would not be evidence that Jiles breached the Limited Partnership Agreement.

**3.** In his third issue, Jiles also argued that the evidence was factually insufficient to support the contract damages awarded, but as previously mentioned, his factual-sufficiency arguments were not preserved for review.

## D. Effect of the Divorce Court's Orders

 In his fourth issue, Jiles argues that, as a matter of law, Judith, the Corporation, and the Limited Partnership cannot have sustained any damages because completion of the Cochran Project was prohibited by three orders issued by the trial court in the divorce case. Jiles did not preserve error in the trial court by asserting this argument in one of the five ways permitted for preserving "no evidence" or "matter-of-law points." *See United Parcel Serv., Inc.*, 25 S.W.3d at 916. We accordingly overrule Jiles's fourth issue.

## E. Res Judicata

Nearly a year before trial, Jiles moved unsuccessfully for summary judgment on the ground, *inter alia*, that the divorce decree precluded all of the claims asserted in this action. After the verdict in this case, Jiles filed a motion titled "Defendant's Motion for Reconsideration of Motion for Summary Judgment on *Res Judicata*." After the trial court rendered judgment, Jiles filed an amended motion for new trial in which he stated, "Defendant reasserts that Plaintiffs' claims are barred by *res judicata* because they were, or could have been, brought in the divorce action between Judith and Jiles Daniels. Defendant therefore incorporates by reference his motion for summary judgment ... and his motion for reconsideration...."

 The denial of a motion for summary judgment usually is reviewable only if the trial court granted a cross-motion for summary judgment or review is authorized pursuant to statute. *See* Tex. Civ. Prac. & Rem.Code § 51.014 (West Supp. 2011) (authorizing appeal of interlocutory orders under certain conditions); *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex.2007) (addressing appeals of cross-motions for summary judgment). Thus, as a threshold matter, we must determine whether Jiles's res judicata arguments are reviewable on appeal. We conclude that they are.

 In his post-trial motions, Jiles reurged one of the same arguments asserted in his earlier motion for summary-judgment, and he continued to refer to the requested relief as a summary judgment; however, these requests were made weeks after the jury returned a verdict on all of the disputed claims. Thus, the relief he sought cannot properly be considered a summary judgment. *See Tregellas v. Jake's Casing Crews, Inc.*, 376 S.W.2d 792, 794 (Tex.Civ.App.-Amarillo 1964, writ ref'd n.r.e.) (stating that when a judgment was rendered only after three witnesses were examined and cross-examined, "calling the judgment a summary judgment would not make it one because it was not summarily rendered"). Summary judgments are used to end litigation short of trial or to narrow the issues for trial by " 'eliminat[ing] patently unmeritorious claims and untenable defenses.' " *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989) (quoting *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n. 5 (Tex. 1979)). After the jury returned a verdict, Jiles no longer sought to narrow the issues to be tried; rather, he sought to prevent an unfavorable verdict from becoming an adverse judgment. In effect, he moved for judgment notwithstanding the verdict. *See Ryland Enter.*, 355 S.W.3d at 666 ("[C]ourts should acknowledge the substance of the relief sought despite the formal styling of the pleading....").

 In all of the motions in which Jiles asserted the res judicata defense, he asked the trial court to dismiss the plaintiffs' claims. This, too, is a misnomer. If a defendant establishes that the claims against him are barred by res judicata, the trial court should render a take-nothing

judgment rather than a judgment dismissing the claims. *Walker v. Sharpe*, 807 S.W.2d 442, 447 (Tex.App.-Corpus Christi 1991, no writ) (citing *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex.1967). In effect, however, there is no difference between a dismissal with prejudice and a take-nothing judgment, and the terms frequently are used interchangeably. *See, e.g., Hot–Hed, Inc. v Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 725 (Tex. App.-Houston [1st Dist.] 2010, pet. denied) (defendant prayed that the trial court would dismiss plaintiff's claims with prejudice and enter an order that plaintiff take nothing on its claims); *Herring Bank v. Centro Cristiano La Voz Que Clama*, No. 14–09–00874–CV, 2011 WL 61850, at *1 (Tex.App.-Houston [14th Dist.] Jan. 6, 2011, no pet.) (mem. op.) (relating that the trial court "ordered [plaintiff] to take nothing by reason of its suit and dismissed [plaintiff's] suit without prejudice"). *See also Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 354–55 (Tex.App.-San Antonio 1999, pet. denied) (courts may treat a pretrial dismissal with prejudice as a summary judgment because the two have the same effect). Moreover, in all of these motions, whether styled as a motion for summary judgment, for reconsideration, or for new trial, Jiles prayed for "such other and further relief, in law or in equity, to which he may show himself justly entitled." Although his post-verdict motion was styled as a motion for reconsideration, Jiles in effect asked the trial court to render a take-nothing judgment on all of the plaintiffs' claims. We therefore construe the request as a premature motion for modification of the judgment or for judgment notwithstanding the verdict. Thus, we conclude that Jiles's res judicata argument is preserved for appellate review. Tex.R.App. P. 33.1(b) ("In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appel-

late review a complaint properly made in the motion...."); *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex.2009) (reviewing judgment notwithstanding the verdict); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (reviewing denial of motion for judgment notwithstanding the verdict in which appellants asserted that they conclusively proved their affirmative defense as a matter of law).

Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in a prior action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). To establish that res judicata bars a plaintiff's claims, the defendant must establish that (a) there is a prior final judgment on the merits by a court of competent jurisdiction; (b) the party currently asserting a claim also was a party to the prior action or was in privity with a party to the prior action; (c) the current claims were raised, or could have been raised, in the prior action. *Id.* As the Texas Supreme Court has explained, the definition of res judicata "is substantially similar to the rule of compulsory counterclaims embodied in the rules of civil procedure." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex.1992) (citing Tex.R. Civ. P. 97(a)). A defendant "must bring as a counterclaim any claim that 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and may be foreclosed by res judicata from litigating it in a subsequent suit. *See id.* at 630 (quoting Tex.R. Civ. P. 97). To determine what claims are precluded by an earlier judgment, we must compare "the factual matters that make up the gist of the complaint" in each claim. *Id.* This transactional approach "giv[es] weight to such considerations as whether the facts are related in time, space, origin, or moti-

vation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* at 631 (quoting RESTATEMENT OF JUDGMENTS § 24(2) (1942)).

■■ Jiles argues that all of the claims asserted in this case are barred because they were, or could have been, fully litigated in the divorce; however, the record does not establish conclusively that Jiles's petition for divorce arose from the same transaction as the claims for breach of contract and breach of fiduciary duty asserted by Judith, the Limited Partnership, and the Corporation. The record also does not show that treatment of the division of the marital estate and litigation of the contract and fiduciary-duty claims as a "trial unit" would have conformed to the parties' expectations, business understanding, or usage. This can be seen in that the divorce decree is an agreed judgment, and Judith and Jiles reached that agreement knowing that the Corporation and the Limited Partnership were not parties in the divorce action, and that all of the claims for breach of contract and breach of fiduciary duty were being separately litigated in another county.[4] Jiles and Judith then initialed the provision in the final divorce decree in which the trial court stated that "all relief requested *in this case* and not granted is expressly denied." (emphasis added).

We therefore overrule Jiles's fifth issue, and hold that the trial court did not err in allowing Jiles's post-trial motions to be overruled by operation of law.

## V. CONCLUSION

We conclude that on the facts of this case, the evidence is sufficient to support the jury's finding that Jiles had a confidential relationship with the Limited Partnership; thus, we affirm the portion of the judgment in which the trial court awarded Empty Eye, & Associates, L.P. $171,601.21 for Jiles's breach of his fiduciary duty. On the other hand, the evidence is legally insufficient to support the jury's finding that Jiles breached the Limited Partnership Agreement. We therefore reverse the portion of the judgment in which the trial court ordered Jiles to pay Judith and Empty Eye, Inc. $173,334.56 for breach of contract. Because this holding eliminates the breach-of-contract recovery that supported the trial court's award of attorney's fees, we additionally reverse that portion of the judgment. And, because the trial court's award of prejudgment interest is based in part on the award of damages for breach of contract, we modify that portion of the judgment to specify that prejudgment interest is awarded on the total amount of damages of $171,601.21.[5]

Justice FROST dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Today, for the first time in the history of Texas jurisprudence, evidence is held le-

---

4. *Cf.* TEX R. CIV. P. 97 (providing that a "judgment based upon a settlement or compromise of a claim of one party to the transaction or occurrence prior to a disposition on the merits shall not operate as a bar to the continuation or assertion of the claims of any other party to the transaction or occurrence unless the latter has consented in writing that said judgment shall operate as a bar").

5. The jury found that the Corporation was entitled to recover damages on both its breach-of-fiduciary-duty claim and its breach-of-contract claim. The Corporation has not raised a cross-point to assert a right to recover for its breach-of-fiduciary-duty claim, nor was it required to request such relief before we reversed the judgment as to the breach-of-contract claim. *See Boyce Iron Works, Inc. v. Sw. Bell Tele. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). The Corporation therefore is not fore-

gally sufficient to support the imposition of an informal fiduciary duty on a limited partner to place the interests of the limited partnership before his own interests. The limited partner owed no formal fiduciary duty to the limited partnership. Nonetheless, in concluding that the limited partner owed the limited partnership an informal fiduciary duty, the majority relies upon the formal fiduciary duties the limited partner owed to the other two parties involved in the business transaction in question. This "combination of relationships" analysis is contrary to Texas law and results in "fiduciary duty by association." By adopting this approach, the majority disregards the status of the limited partnership as a separate legal person. Under the applicable standard of review, the trial evidence is legally insufficient to support the jury's findings (1) that a relationship of trust and confidence existed, giving rise to an informal fiduciary duty; and (2) that damages resulted to two plaintiffs from the limited partner's alleged breach of the partnership agreement. The limited partner preserved his right to rendition of a take-nothing judgment regarding these issues. Accordingly, this court should reverse the trial court's judgment and render a take-nothing judgment.

**The evidence is legally insufficient to support the finding of a relationship of trust and confidence between the limited partner and the limited partnership.**

An informal fiduciary duty may arise from certain relationships involving a high degree of trust and confidence that do not give rise to a formal fiduciary duty.[1] *See Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005). But, to give full force to contracts, Texas courts do not allow such relationships to be found lightly. *See id.* The general rule is that parties to a contract are free to pursue their own interests without incurring tort liability, even if doing so results in a breach of the contract. *See Seymour v. American Engine & Grinding Co.,* 956 S.W.2d 49, 60 (Tex.App.-Houston [14th Dist.] 1996, writ denied). That one business person trusts another, and relies upon the other's promise to perform a contract, does not give rise to an informal fiduciary duty. *See id.* Every contract includes an element of confidence and trust that each party will perform faithfully the party's obligations under the contract. *See id.* Likewise, that the relationship has been a cordial one of long duration is not evidence of a confidential relationship. *See id.* Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship, and subjective trust is not sufficient to transform an arms-length transaction into a fiduciary relationship. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176–77 (Tex.1997). To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must have existed before, and apart from, the agreement made the basis of the suit. *See Meyer,* 167 S.W.3d at 331.

---

closed from raising this issue in a timely motion for rehearing.

1. In certain formal relationships, such as the attorney-client relationship, a fiduciary duty arises as a matter of law. *See Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005). Courts sometimes call such a duty a "formal fiduciary duty." *See Insurance Company of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.

1998). The trial court correctly instructed the jury that appellant Jiles Daniels, a limited partner in appellee Empty Eye & Associates, L.P., did not owe the limited partnership a fiduciary duty based upon his status as a limited partner. Therefore, this appeal does not involve any issue as to the existence of any formal fiduciary duty.

In response to Question 1, the jury found that a relationship of trust and confidence existed between appellant Jiles Daniels and appellee Empty Eye & Associates, L.P. ("Limited Partnership"), giving rise to an informal fiduciary duty owed by Jiles to the Limited Partnership. At the time of the events material to the appellees' claims against Jiles, Jiles was married to appellee Judith Daniels. In addition, Jiles and Judith were the two limited partners in the Limited Partnership and the two shareholders in appellee Empty Eye, Inc. ("Corporation"), a corporation that served as the general partner of the Limited Partnership. After describing these relationships in their appellate brief, appellees assert that "the combination of these relationships, in light of the evidence presented at trial, is sufficient to support a jury finding that a special trust relationship existed, and that [Jiles] owed an informal fiduciary duty to [the Limited Partnership]." The majority agrees and employs this "combination of relationships" analysis.

The majority bases its conclusion that the evidence is legally sufficient upon its determination that Jiles owed a formal fiduciary duty to Judith (as her husband) and to the Corporation (as its president). But the existence of formal fiduciary duties owed to two persons does not support the finding of a relationship of trust and confidence giving rise to an informal fiduciary duty to a third person to whom no formal fiduciary duty is owed. The existence of a relationship between two parties giving rise to a formal fiduciary duty does not compel a finding that a relationship of trust and confidence exists between the parties. *See Underwriters at Lloyds v. Edmond, Deaton & Stephens Ins. Agency,* No. 14–07–00352–CV, 2008 WL 5441225, at *8, n. 9 (Tex.App.-Houston [14th Dist.] Dec. 30, 2008, no pet.) (holding that the existence of a relationship giving rise to a formal fiduciary duty does not compel a finding of a relationship of trust and confidence giving rise to an informal fiduciary) (mem. op.). A fiduciary relationship must stand on its own.

The Limited Partnership, the Corporation, Judith, and Jiles are all separate legal persons. *See In re Allcat Claims Serv., L.P.,* 356 S.W.3d 455, 463–66 (Tex.2011) (holding that a Texas limited partnership is a legal person separate and distinct from the limited and general partners). No party has pleaded or presented proof of a theory for disregarding the distinction between these legal persons; therefore, in analyzing the first issue, this court cannot rely upon evidence of Jiles's relationship with Judith or the Corporation as evidence regarding Jiles's relationship with the Limited Partnership. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 798–99 (Tex.2002) (holding that Texas law presumes that two corporate entities are distinct from each other and that party seeking to ascribe one entity's actions to another by disregarding their distinct status must plead and prove this allegation); *In re BPZ Resources, Inc.,* 359 S.W.3d 866, 876, n. 6 (Tex.App.-Houston [14th Dist.] 2012, orig. proceeding) (holding that, absent pleading and evidence supporting a theory for ignoring the distinction between legal persons, a court must respect these distinctions in conducting its legal analysis); *Brazosport Bank of Texas v. Oak Park Townhouses,* 889 S.W.2d 676, 683–84 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that there was legally insufficient evidence of a relationship of trust and confidence between a bank and a partnership despite formal fiduciary duties owed to the bank and the partnership by other persons involved in the transactions in question). In *Brazosport Bank of Texas,* this court held that the evidence was legally insufficient to support the jury's

finding of a relationship of trust and confidence between a bank and a general partnership. *See Brazosport Bank of Texas,* 889 S.W.2d at 683–84. In doing so, this court noted that the general partners owed one another a formal fiduciary duty and that the directors owed the bank a formal fiduciary duty. *See id.* And, this court concluded that that even if one or more of the general partners were also directors of the bank, these relationships and formal fiduciary duties between other persons in the transactions in question were not relevant as to whether a confidential relationship existed between the bank and the partnership. *See id.* Texas law does not allow an informal fiduciary duty to be imposed on one person based upon a "combination of relationships" among that person and other legal persons to whom a formal fiduciary duty is owed. *See id.* The majority's analysis conflicts with this court's precedent in *Brazosport Bank of Texas. See id.*

Jiles was not an officer of the Limited Partnership, nor did he have a marital relationship with the Limited Partnership. Jiles's marital relationship with Judith and his status as president of the Corporation are not relationships with the Limited Partnership. Though Jiles was a limited partner of the Limited Partnership, this relationship, by itself, does not indicate that a relationship of trust and confidence existed between Jiles and the Limited Partnership. Presuming that Jiles had relationships giving rise to a formal fiduciary duty with both the Corporation and Judith, these relationships and duties are not relevant to the existence of a relationship of trust and confidence between Jiles and the

Limited Partnership. *See In re Allcat Claims Serv., L.P.,* 356 S.W.3d at 463–66; *BMC Software Belgium, N.V.,* 83 S.W.3d at 798–99; *In re BPZ Resources, Inc.,* 359 S.W.3d at 876, n. 6; *Underwriters at Lloyds,* 2008 WL 5441225, at *8, n. 9; *Brazosport Bank of Texas,* 889 S.W.2d at 683–84. The majority errs in relying upon evidence regarding these relationships and duties in concluding that the evidence is sufficient to support the finding of such a relationship.

The majority relies upon Jiles's participation in developing the Limited Partnership's business plan and his execution of personal guaranties of the Limited Partnership's bank debt. This activity reflects arms-length business transactions undertaken for the parties' mutual benefit; it does not reflect a relationship of trust and confidence.[2] *See Meyer,* 167 S.W.3d at 331. Judith testified at trial, "I trusted [Jiles]." The majority relies upon this testimony. But, Judith did not testify the Limited Partnership trusted Jiles. Judith is a distinct person from the Limited Partnership. *See In re Allcat Claims Serv., L.P.,* 356 S.W.3d at 463–66. Even if Judith had testified that the Limited Partnership trusted Jiles, this assertion would be a conclusory statement of subjective trust that would be insufficient to raise a fact issue. *See Schlumberger Tech. Corp.,* 959 S.W.2d at 176–77.

The majority cites *Dunnagan v. Watson* as support. *See* 204 S.W.3d 30 (Tex.App.-Fort Worth 2006, pet. denied). But, that case does not support the majority's analysis because in *Dunnagan* there was no issue as to whether the evidence was suffi-

---

**2.** The appellees note that the Limited Partnership had been in existence for five years before the Cochran Project and that the Limited Partnership previously had completed projects for the construction of two apartment complexes and of Jiles and Judith's house.

The Limited Partnership's existence for five years and its completion of three projects are not facts indicating a confidential relationship. The evidence does not show a special relationship of trust and confidence in the operation of the Limited Partnership.

cient to support a finding of a relationship of trust and confidence or whether the defendants owed a fiduciary duty. *See id.* at 44–48. In *Dunnagan,* the limited partner did not assert on appeal that he did not owe a fiduciary duty; rather, the limited partner challenged the legal and factual sufficiency of the evidence supporting the jury's findings that he breached his fiduciary duty and that damages to the plaintiff were caused by his breach. *See id.* The majority also relies upon *Grierson v. Parker Energy Partners 1984–I. See* 737 S.W.2d 375, 377–78 (Tex.App.-Houston [14th Dist.] 1987, no writ). But, the *Grierson* case involved a corporate officer's potential liability based upon his knowing participation in the corporation's breach of its fiduciary duty. *See id.* This case did not involve an informal fiduciary duty or an alleged relationship of trust and confidence.[3] *See id.*

Neither the majority nor the parties have cited, and research has not revealed, any Texas case in which a court held that a limited partner owed the limited partnership an informal fiduciary duty based upon a relationship of trust and confidence. Under the applicable standard of review, the evidence is legally insufficient to support the jury's finding that a relationship of trust and confidence existed between Jiles and the Limited Partnership. *See Meyer,* 167 S.W.3d at 330–31; *Schlumberger Tech. Corp.,* 959 S.W.2d at 176–77; *Seymour,* 956 S.W.2d at 59–60; *Brazosport Bank of Texas,* 889 S.W.2d at 683–84.

**The majority uses an incorrect legal standard in analyzing the substance of the limited partner's motion for new trial.**

The majority correctly states that this court must determine whether the substance of Jiles's "Amended Motion for New Trial," includes a motion for judgment notwithstanding the verdict ("a JNOV motion"). The majority also correctly notes that this motion includes a

---

**3.** The appellees argue that, under Texas law, a limited partner owes a fiduciary duty to the limited partnership if the limited partner "actively engages in control over the operation of the business." In support of this proposition, the appellees cite three cases. These cases do not support the proposition. *See McBeth v. Carpenter,* 565 F.3d 171, 177–78 (5th Cir. 2009) (holding that, under Texas law, a formal fiduciary duty arises as a matter of law out of the relationship between two limited partners); *Asshauer v. Wells Fargo Foothill,* 263 S.W.3d 468, 473 (Tex.App.-Dallas 2008, pet. denied) (indicating that, if a limited partner acts like a general partner by participating in the control of the partnership's business, then the limited partner may be liable to third parties for the partnership's obligations, if the third party conducted business with the partnership reasonably believing that the limited partner was a general partner, without addressing the existence of a confidential relationship or a fiduciary duty); *Dunnagan,* 204 S.W.3d at 44–48 (holding that the trial evidence was legally and factually sufficient to support the jury's findings as to the breach and damage elements of a breach-of-fiducia- ry-duty claim asserted by one limited partner against another limited partner, in case in which appellant did not challenge the existence of a fiduciary duty). The parties have not cited and research has not revealed any Texas precedent in which a court holds that a limited partner owes a fiduciary duty to the limited partnership if the limited partner actively engages in control over the operation of the partnership business. Even if this proposition were correct, it would not be relevant in determining whether the trial evidence is legally sufficient to support the jury's finding of a confidential relationship between Jiles and the Limited Partnership. Because no party objected to any relevant part of the jury charge at the charge conference, this court measures the sufficiency of the evidence based upon the trial court's charge. That charge did not allow the jury to find a confidential relationship or a fiduciary duty if the jury found that Jiles actively engaged in control over the operation of the business. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex. App.-Houston [14th Dist.] 2006, no. pet.).

general prayer in which Jiles asked the trial court for "such other and further relief, in law or in equity, to which he may show himself justly entitled." But, in relying upon this general prayer, the majority overlooks the applicable legal standard from the Supreme Court of Texas. *See Werner v. Colwell,* 909 S.W.2d 866, 870, n. 1 (Tex.1995); *Horrocks v. Tex. Dep't of Transp.,* 852 S.W.2d 498, 499 (Tex.1993) (per curiam); *J. Weingarten, Inc. v. Razey,* 426 S.W.2d 538, 540–41 (Tex.1968). This legal standard is best understood in light of its history.

When Justice Calvert published his famous law review article regarding "no evidence" and "insufficient evidence" points of error, the Supreme Court of Texas had not yet held that a party could preserve a legal-sufficiency complaint by means of a motion for new trial. *See* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362 (1960). Justice Calvert stated the following regarding preservation of error in the trial court as to legal-sufficiency complaints:

> "No evidence" points of error are inherently and fundamentally points which call for reversal of a trial court's judgment and rendition of judgment for the appellant. They must, therefore, be based upon and related to one or more of the following procedural steps in the trial court: (a) motion for instructed verdict; (b) objection to the submission to the jury of a vital fact issue; (c) motion for judgment notwithstanding the jury's verdict; (d) motion to disregard the jury's answer to a vital fact issue.

*Id.* (footnotes omitted). Eight years later, the Supreme Court of Texas held for the first time that a party may preserve a legal-sufficiency complaint solely in a motion for new trial, but the high court con-

cluded that if such a complaint is sustained on appeal, the proper remedy is reversal and remand for a new trial. *See Razey,* 426 S.W.2d at 540–41. In *Razey,* the Supreme Court of Texas did not expressly state whether the motion for new trial contained a general prayer, nor did the court address whether a motion for new trial containing a general prayer and a legal-sufficiency complaint could be construed as including a JNOV motion. *See id.* Twenty-five years later, the high court again held that, if a party preserves a legal-sufficiency complaint only in a motion for new trial, then the only proper appellate remedy for the trial court's error is reversal and remand for a new trial. *See Horrocks,* 852 S.W.2d at 499. A few years later, the Supreme Court of Texas issued a similar holding. *See Werner,* 909 S.W.2d at 870, n. 1. Given that it is extremely unusual for a motion to lack a general prayer, and given that the high court in these cases did not state that the motions in question lacked general prayers, it is reasonable to conclude that each of the motions for new trial in these cases contained a general prayer. As pointed out by Professors Powers and Ratliff in their 1991 law review article, the holding in these cases raises several issues. *See* William Powers, Jr. and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 530–32 (1991).

As noted by Justice Calvert, if the evidence is legally insufficient to support a finding of an essential element of a claim, then the only appropriate remedy should be rendition of a take-nothing judgment on that claim. *See* Calvert, 38 Tex. L.Rev. at 362; Powers and Ratliff, 69 Tex. L.Rev. at 530–31. If the evidence at the subsequent jury trial is the same as or substantially similar to the evidence at the prior trial, then, even if the trial court grants a directed verdict, the new trial is not an effective

remedy because it results in additional attorney's fees, costs, and other expenses to the parties, as well as needless expenditure of judicial resources and a waste of the jury's time. Significantly, for a variety of reasons, the evidence in the subsequent jury trial may be materially different from the evidence in the previous trial and the evidence in the subsequent trial may be legally sufficient. In this case, the remedy of a new trial is not effective for the additional reason that it gives the claimant a second chance to raise a fact issue and may not result in a take-nothing judgment against the claimant on the claim in question. The Supreme Court of Texas has not explained why a new trial is a proper remedy for a valid legal-sufficiency complaint, but it is clear that the high court has held that this is a proper remedy if the movant has requested a new trial and has not laid the predicate for rendition of a take-nothing judgment. *See Werner,* 909 S.W.2d at 870, n. 1; *Horrocks,* 852 S.W.2d at 499; *Razey,* 426 S.W.2d at 540–41.

But, even if a new trial is a proper remedy in this circumstance, in these cases the Supreme Court of Texas did not address whether the substance of the motion for new trial included a JNOV motion based upon the legal-sufficiency complaint. *See Werner,* 909 S.W.2d at 870, n. 1; *Horrocks,* 852 S.W.2d at 499; *Razey,* 426 S.W.2d at 540–41. Professors Powers and Ratliff have suggested that if a motion for new trial contains a complaint that the evidence is legally insufficient to support one or more jury findings, and if the only effective remedy for this legal-sufficiency complaint is rendition of a take-nothing judgment on that claim, then the court should conclude that the substance of the

"motion for new trial" includes a JNOV motion, as long as the motion for new trial contains a general prayer, as almost all such motions do.[4] *See* Calvert, 38 Tex. L.Rev. at 362; Powers and Ratliff, 69 Tex. L.Rev. at 530–31; *see also Kissman v. Bendix Home Sys.,* 587 S.W.2d 675, 677 (Tex.1979) (stating that a request for relief may be based upon the general prayer in a petition if the relief is consistent with a theory reflected in the petition). Though this reasoning seems compelling, it is contrary to the prior holdings of the Supreme Court of Texas. *See Werner,* 909 S.W.2d at 870, n. 1; *Horrocks,* 852 S.W.2d at 499; *Razey,* 426 S.W.2d at 540–41. Under binding precedent, the high court has concluded that the substance of a motion does not include a JNOV motion based upon the combination of a legal-sufficiency complaint and a general prayer; rather, for the substance of a motion to include a JNOV motion, the movant must expressly request rendition of judgment in the movant's favor. *See Werner,* 909 S.W.2d at 870, n. 1; *Horrocks,* 852 S.W.2d at 499; *Razey,* 426 S.W.2d at 540–41. Therefore, the majority's reliance upon the general prayer is contrary to these high-court precedents. *See ante* at p. 754.

**The substance of the limited partner's motion for new trial includes an express request for rendition of judgment in his favor.**

This court must give effect to the substance, rather than the form or title, of Jiles's motion for new trial. *See State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (1980). In addition, in this context, the Supreme Court of Texas requires an express, rather than an implied, request for rendition of a judgment in the movant's

---

4. Under this rule, it would not be necessary to allow parties to preserve error by means of a legal-sufficiency complaint combined with a request for a new trial; therefore, the remedy for all legal-sufficiency issues sustained on appeal would be a reversal and rendition of judgment.

favor.[5] *See Werner,* 909 S.W.2d at 870, n. 1; *Horrocks,* 852 S.W.2d at 499; *Razey,* 426 S.W.2d at 540–41. The portions of the motion for new trial relevant to determining whether the substance of the motion includes such a request are as follows:

- In the first sentence of the motion, Jiles asks the trial court "to grant him a new trial for the reasons given below." Jiles then states that, "[i]n the alternative, [Jiles] asks the Court to dismiss Plaintiffs' claims with prejudice."

- Jiles states a second time that he "asks the court to grant a motion for new trial based on the reasons given below."

- Jiles states that "[g]enerally speaking, a court should grant a motion for new trial (1) if the evidence is insufficient to support the jury's answer to a jury question, or (2) if there is no evidence to support the jury's answer to a jury question."

- Jiles argues that the trial court "should grant a motion for new trial because there is no evidence, or legally [sic] insufficient evidence, to support the jury's answer to question number '1.'"

- Jiles presents argument in support of his contention that the evidence is legally insufficient to support the jury's findings as to the existence of a relationship of trust and confidence between Jiles and the Limited Partnership.

- Regarding the jury's findings in response to questions 4, 5, and 6, Jiles presents argument regarding legal-sufficiency challenges to these findings and asks the trial court to grant a new trial.

- In a section entitled "Res Judicata," Jiles "reasserts that Plaintiffs' claims are barred by res judicata because they were, or could have been, brought in the divorce action between Judith and Jiles." Jiles then "incorporates by reference his motion for summary judgment on *res judicata,* filed November 3, 2008, and his motion for reconsideration, filed November 13, 2009." Jiles asks the trial court "to grant summary judgment against Plaintiffs on the grounds that their claims are barred by the doctrine of *res judicata,* and to accordingly dismiss all of Plaintiffs' claims against [Jiles]."

- At the end of the motion, Jiles asks the trial court "to grant a new trial, or in the alternative to dismiss Plaintiffs' claims."

Jiles does not employ the usual vernacular to ask the trial court to render a take-nothing judgment in his favor or to render a judgment notwithstanding the verdict. Jiles does not ask for dismissal with prejudice or, in the alternative, for a new trial. Instead, at the beginning of the motion Jiles asks for "a new trial for the reasons stated below," or in the alternative for "the Court to dismiss Plaintiffs' claims with prejudice," without any reference to the

---

**5.** In its analysis, the majority relies upon *Ryland Enterprise, Inc. v. Weatherspoon. See* 355 S.W.3d 664, 665 (Tex.2011) (per curiam). In that case, the court held that the substance of a motion included either a motion for new trial or a motion to modify, either of which extended the deadline for perfecting appeal, providing the court of appeals with appellate jurisdiction. *See id.* Though this case is an example of a court giving effect to the substance of a motion, it does not involve the rule that, to preserve a rendition point in a motion for new trial, the appellant must expressly request rendition of judgment in its favor. *See Werner,* 909 S.W.2d at 870, n. 1. Therefore, the *Ryland Enterprise* case is not on point.

reasons stated below. Jiles states that a new trial is a proper remedy when the evidence is legally insufficient to support a jury finding. Then, as Jiles asserts legal-sufficiency challenges to various jury findings, Jiles repeatedly asks for a new trial but does not request rendition of judgment or a dismissal of claims in these parts of the motion.

Dismissal of claims is a disposition generally associated with motions to dismiss or motions for summary judgment. In the only place in his motion in which Jiles provides an express reason as to why he is entitled to a dismissal, Jiles asserts that he is entitled to summary judgment dismissing all of the claims against him under the doctrine of res judicata. In this section, Jiles incorporates by reference his prior motion for summary judgment and his motion for reconsideration of the denial of this motion. In these two motions, Jiles asked the trial court to dismiss all of the claims against him under the doctrine of res judicata. It could be argued that the substance of the motion is that Jiles seeks a new trial based upon various legal-sufficiency arguments and, in the alternative, he seeks a summary judgment dismissing all claims with prejudice under the doctrine of res judicata.[6] But, the opening paragraph of the motion contains a general request for dismissal with prejudice, and courts have equated this relief with a take-nothing judgment. A take-nothing

judgment would be a judgment notwithstanding the jury's verdict. In the final paragraph, Jiles makes a second general request for dismissal of all of the claims against him.

Jiles certainly could have articulated his arguments and requests for relief with more clarity and precision. Nonetheless, given the totality of the language used in the motion and the context in which the motion was made, the substance of this motion includes an express request for rendition of judgment in Jiles's favor, sufficient to preserve a rendition point under high court precedent. See Werner, 909 S.W.2d at 870, n. 1; Horrocks, 852 S.W.2d at 499; Razey, 426 S.W.2d at 540–41. For the reasons stated above, Jiles preserved a rendition point as to his first, second, and fifth appellate issues.[7]

**The majority fails to address all of the appellees' arguments as to why the evidence is legally sufficient to support the jury's finding that the limited partner breached the Limited Partnership Agreement.**

In his second issue, Jiles asserts that the trial evidence is legally and factually insufficient to support a finding that he breached the Limited Partnership Agreement ("Partnership Agreement") and that Judith or the Corporation sustained damages resulting from any breach of the Partner-

---

6. The majority concludes that the substance of the motion does not include a request for a summary judgment dismissing all claims with prejudice because the trial court would have erred in granting such a request after a jury trial. See ante at pp. 753–54. But parties are free to ask for relief to which they are not entitled, and the inquiry here is not what valid requests were made by Jiles but what requests he actually made under the substance of the motion. See Lehmann v. Har–Con Corp., 39 S.W.3d 191, 204–06 (Tex.2001) (holding that, even though it is error for a trial court to grant summary judgment as to

claims not challenged in the summary-judgment motion, courts must still give effect to substance of trial court's order, which may be that the court erroneously granted such relief). Under the plain meaning of the language Jiles used in the motion, Jiles asked the trial court to grant a post-judgment motion for summary judgment, even though the trial court would have erred if it had granted that request.

7. As stated above, this court should sustain Jiles's first issue. The majority correctly concludes that Jiles's fifth issue lacks merit.

ship Agreement. The majority concludes that the evidence is legally insufficient to support the breach finding.[8] Under the majority's analysis, it is not necessary to address the part of the second issue in which Jiles challenges the damages finding. This court should reverse the trial court's judgment on the breach-of-contract claim because the evidence is legally sufficient to support this finding.

In response to Question 6, the jury found that $173,334.56 would fairly and reasonably compensate "Plaintiffs" for their damages that resulted from Jiles's breach of the Partnership Agreement. The charge did not define the term "Plaintiffs." On appeal, the appellees argue that, if the record contains legally sufficient evidence that the Limited Partnership suffered these contract damages, then this court must overrule Jiles's issue, even if the record contains legally insufficient evidence of contract damages as to Judith and the Corporation. This assertion is incorrect.

The parties to the Partnership Agreement are Jiles, Judith, and the Corporation. In the appellees' live petition, only Judith and the Corporation assert a claim against Jiles for breach of the Partnership Agreement, and the record does not reflect that a claim by the Limited Partnership for breach of the Partnership Agreement was tried by consent. In response to a post-verdict motion filed by Jiles, the appellees described the jury's verdict as follows: "the jury found for two of the plaintiffs on their breach of fiduciary duty claims, and for *two of the plaintiffs* on the breach of contract claims." (emphasis added). In addition, the appellees requested that the trial court render judgment in

favor of the Limited Partnership on its breach-of-fiduciary-duty claim and in favor of Judith and the Corporation on their breach-of-contract claims. The appellees did not state that the Limited Partnership had asserted a breach-of-contract claim, nor did the appellees ask the trial court to render judgment in favor of the Limited Partnership on any breach-of-contract claim. As requested, the trial court rendered judgment in favor of the Limited Partnership based only upon its breach-of-fiduciary-duty claim. In their appellate brief, the appellees do not argue that the Limited Partnership asserted a breach-of-contract claim against Jiles. Instead, the appellees argue that, by failing to object to Question 6, Jiles allowed the jury to include breach-of-contract damages sustained by the Limited Partnership in answering this question. In this context, this court should conclude that the term "Plaintiffs," as used in Question 6, reasonably can include only Judith and the Corporation. Therefore, in reviewing the sufficiency of the evidence, this court should look only at evidence regarding damages suffered by Judith or the Corporation as a result of Jiles's alleged breach of the Partnership Agreement.

Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, this court should conclude that the trial evidence would not enable reasonable and fair-minded people to find that Judith or the Corporation sustained $173,334.56 in damages or any amount of damages at all as a result of

8. In doing so, the majority does not address the appellees' argument that the evidence is legally sufficient to support the breach finding based upon article 6132a–1, sections 5.01,

5.02(a), and 5.02(d) of the Texas Revised Civil Statutes. *See* Tex.Rev.Civ. Stat. Ann. art. 6132a–1, §§ 5.01, 5.02(a), 5.02(d) (Vernon Supp. 2009).

Jiles's breach of the Partnership Agreement. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex.2005). Therefore, the evidence is legally insufficient to support the jury's damages finding. Accordingly, this court should sustain Jiles's second issue to that extent.

### Conclusion

Today, this court imposes on a limited partner the highest duty recognized under the law based upon the majority's "combination of relationships" analysis under which a fiduciary relationship arises from the defendant's associations with third persons rather than from the defendant's relationship or dealings with the plaintiff. This analysis is contrary to Texas law and results in "fiduciary duty by association." The court's decision is unsettling, especially in a business context. Businesses operate based upon the reasonable expectation that courts will recognize the lines separating corporations, limited partnerships, and other legal persons. When, as in this case, those lines are ignored, settled expectations are frustrated. Given the high hurdle under Texas law for the imposition of a fiduciary duty, no member of the business community would expect to owe a fiduciary duty to one person based upon that member's relationships or dealings with *another* person, and it is unprecedented for the court to so hold today.

The evidence is legally insufficient to support a finding (1) that a relationship of trust and confidence existed between Jiles and the Limited Partnership, or (2) that Judith sustained any amount of damages resulting from Jiles's breach of the Partnership Agreement, or (3) that the Corporation sustained any amount of damages resulting from Jiles's breach of the Partnership Agreement. The substance of Jiles's motion for new trial includes an express request for rendition of judgment in Jiles's favor, sufficient to preserve a rendition point. Therefore, under applicable precedent from the Supreme Court of Texas, Jiles preserved his right to rendition of a take-nothing judgment regarding these issues. Accordingly, this court should sustain in part Jiles's first and second issues, reverse the trial court's judgment, and render judgment that the appellees take nothing. Because it does not, I respectfully dissent.